Mathers, J.
'This action is brought by the city solicitor of the city of Lima by favor of Revised Statutes, 1777, which makes it the duty of such officer to apply to the courts for an injunction to-prevent the abuse by the city of any of its corporate powers, or the execution and performance of any contract made in behalf *114 of the corporation in contravention of the laws and ordinances governing the same. He sues, therefore, in behalf of the city. The defendants.are the members^of the council of said city and The Lima Electric Railway & Light Company. The plaintiff seeks to restrain the defendant eouncilmen from taking any further action with reference to a certain ordinance which was passed by them as members of the council on November 5, 1906; which ordinance purported to extend for the full period allowed by law the right of the defendant railway company to operate and maintain its railroad in and along Bellefontaine avenue in the city of Lima.
The plaintiff contends that the action which the council took, and which it proposes to take, was an abuse of corporate power and was 'also- in contravention of the laws governing the same. He bases his contention upon the claim that the Lima Electric Railway & Light Company has no valid franchise in said Bellefontaine avenue; and that if it has, the ordinance referred to was passed without giving the notice by publication required by original Revised Statutes, 2502 (1536-185), and that no consents of the owners of property abutting on said avenue to such es-tension were obtained. The plaintiff also contends that even if the defendant railway company has a franchise in Bellefontaine avenue, that it has about ten and a half years yet to run and that the council has no power to extend it until the expiration- of said franchise. .
Every one of the questions of law raised by this controversy has been passed on by the courts heretofore. In State v. Railway (6 C. C., 318), the circuit court of the eighth circuit had before it and squarely decided the questions of law relied on by the plaintiff, and that decision was adverse to the plaintiff’s contention; and the judgment of the circuit court in that case was affirmed without report by the Supreme Court - of this state, January 26, 1892, in State v. Railway, 27 Bull., 64. The section of the statutes there under consideration and the section ■as it stands to-day are identical so far as their provisions in this behalf are concerned, and while the Legislature carried original Revised Statute 2502 — the one construed by State v. *115 Railway, supra — into the new municipal code, as Section 30 (1536-185), it changed it so as to make it of general application throughout the state and thus removed the objections theretofore existing against it as to its constitutionality. It was not materially changed in other parts. So that the consideration given the section by the circuit court referred to, affirmed as it was by the Supreme Court, is the Supreme Court’s construction of the statute as it stands to-day.
In the case of the State v. Railway, supra, it was decided as follows:
“It was not the intention of the Legislature to apply the provision of Section 2502 of the Revised Statutes, in respect to publication of notice and competition in rates, to a renewal of the grant of a franchise to a street railway company to occupy the streets; nor is the consent of the property owners a condition precedent to the validity of such grant.
“Whenever in the opinion of the city council the public welfare would be promoted thereby, it may, by agreement with a street railway company, terminate a grant previous to its expiration, and renew the franchise for any period not in excess of the limitation fixed by statute. ’ ’
The plaintiff bases his claim that the defendant railway company has no valid franchise in Bellefontaine avenue, upon the contention that the Depot Railway Company acquired no franchise- in Bellefontaine avenue, and the defendant railway company, being the successor of the Depot Railway Company, .acquired no other rights therein than those possessed by the Depot Company. The claim is made that the Depot Company acquired no right to operate over the lines of the Lima Electric Railway Company, which it was sought to give the Depot Company by the ordinance of June 13, 1892, and which provided for an extension of the Depot Company’s route over the then existing lines 'which the Lima Electric Railway Company had a right to build and operate.
It appears from this ordinance that the said Lima Electric Railway Company consented to such extension and also that notice of the application for the extension was given for three consecutive weeks by publication in a paper of general circulation *116 in the city of Lima, and that there were filed with the council the lawful consents of a majority of the owners of the feet front of the property abutting on the line of said proposed extension. Among other routes, on which the Depot Company’s line was sought to be extended, was the following, as found in Section 1 of said extension ordinance, viz., “commencing at the public square in the city of Lima, thence on Market street and Bellefontaine avenue in said city east to the fair grounds.”
It was suggested in the brief of counsel for plaintiff, that, notwithstanding the recital in the ordinance mentioned, no consents and no notices were actually obtained or given. No proof, however, was adduced in support of this assertion, and, as the court will presume that the council at the time it acted upon the extension, did so according to law and that its acts were regular and legal, the court can only conclude that the extension was legally and regularly authorized.
While some stress was laid upon the fact that the original depot route was but 450 feet in length, while the line as extended was about four miles, and it was earnestly contended that the extended route was in fact a new route, yet the court can not conclude, in the absence of any claim and proof of fraud, that the council did not consider the extension beneficial to the public and, therefore, might honestly attempt it; neither would the court be justified in finding from the fact alone that the extension was so disproportionate to the original length of route that the meat this Caesar fed upon, whereby he grew so great, must have been tainted.
But aside from any question of fraud it was not necessary, in view of the decision in State v. Railway, supra, and its affirmance by the Supreme Court, for the Depot Company to procure consents of abutters to the extension of its franchise to operate over the routes of the Lima Electric Railway Company which were then built and in operation; nor that notice of its application for such extension should be published and the Depot Company and the council could, by agreement, cause the former’s twenty-five years’ franchise to expire before the end of the twenty-five years, and at the expiration, so effected, *117 renew the grant for twenty-five years, provided the Depot Company was not released from any obligation or liability imposed by the terms of the original franchise or grant.
This being so and the original franchise of the Depot Company being valid, as to which there is no question raised, the counci], if it deemed an extension of the Depot Company’s franchise over the routes of the Lima Electric Railway beneficial to the public, and the latter company consented to such extension, might, by ordinance, authorize such extension without the publication of notice or Avithout first obtaining the consent of abutters, and it will be presumed, in vieAV of the fact that the extension is authorized, that the council considered that the same Avould be beneficial to the public. If it did publish notice of the application for the extension and consents of abutting property holders were obtained, and the presumption is, that both Avere done because the extension ordinance recites the fact, and nothing has been shoAvn to the contrary, it Avas a work of supererogation.
The rationale of the Iravs and decisions in this behalf is- simply this: The streets- of a municipality are public highways intended for public travel in Avhieh the AAdiole public, represented by the state and even the nation, has • an interest. Ordinarily the state is the depository of poAver AA'ith reference to such highAvays. Usually the Legislature confers certain poAvers on the municipality in Avhieh the streets are located. This is- the case in Ohio and the council, as representative of the municipality, is given the care, supervision and control of the streets in the corporation, AAdiicli it must exercise to secure the objects of the dedication for street purposes, and must exercise conformably to legal duties and limitations.
The OAvner of property abutting on a street has a certain interest in the street, different from that of the general public. It is largely concerned with his right of ingress and egress to and from his abutting lands. A street railway is a means to an improved use of the highway, and is authorized and tolerated because it is a public convenience, Avithout Avhieh the social and economic activities of our present day cities would be para *118 lyzed and ■ their growth would speedily end. Notwithstanding their necessity the Legislature has considerately provided that the rights of abutters shall not be ignored, and so has required that before any street can be utilized for this improved method of transportation, the property holders must be consulted. If the owners of a majority of the foot frontage consent, then the council may determine that such street shall be one which may be used for street railway purposes. If an abutter is specially damaged by the construction of the proposed railway therein he has his private remedy, but the street may thenceforth be said to be a street- railway street. Having been put in this class of highways — those wherein this improved method of transportation is to be used — the council may grant to those who will agree to carry passengers over such route at the lowest rates of fare, the right to construct and operate a street railway, in such street, for a period not exceeding twenty-five years.
Advertising for bids for the privilege is required by the statute, but no advertising is required of an intention to renew the grant at its expiration; neither is it required that the property holders shall consent to the renewal. Their consent in the first instance is not as to the length of time of the grant, but to the proposition to use the street for street railway purposes, and at no other time is their consent required by the statutes as construed by the circuit and Supreme Courts, supra, as to the length of time of any particular grant.
Having thus consented to the use of the street for street railway purposes, and the railway being built in pursuance thereof and of a valid grant by council, the character of that street as a street railway route is fixed and it is not required that the owners of the abutting property be again or thereafter consulted as to the term of the franchise by which any particular person or persons may operate the railway therein. The council may grant the right to any person or persons, natural or artificial, for any length of time council sees fit, not exceeding twenty-five years at a time, and may renew such right whenever it expires by lapse of time or by reason of an agreement to that *119 effect between the proprietor of the railway and the council. Revised Statutes, 2501, authorizes a renewal at expiration upon such conditions as may be considered by council conducive to the public interest and, as was held in State v. Railway, supra, the existing grant may be determined by agreement and a new grant made at the same time. The only limitation on the power of council in this behalf is, that the new grant shall not exceed twenty-five years and the grantee shall not thereby be released from any obligation or liability of the old grant.
The fact then that the original route of the Depot Railway Company was but 450 feet in length, is immaterial. It was an established route and it might have been extended over any other route within the city. The extension authorized was over the lines of the Linla Electric Railway Company by agreement with the latter company, which owned and operated an existing street railway over routes already established. As these routes could not legally have been established until the owners of the majority of the frontage on these routes had consented, and- as it has not been shown, nor is it contended, that they did not consent to an establishment of the routes which the Lima Electric Railway Company had a right to operate over, and as the court will not presume these routes were established contrary to law, it satisfactorily appears that the abutters have consented to the operation of a street railway over the routes of the Lima Electric Railway Company, and these consents inured to the benefit of the Depot Company when it obtained the franchise to operate over the same routes. Knorr v. Miller, 5 C. C., 609, affirmed by Supreme Court without report; Knorr v. Miller, 27 Bull., 64.
It is only when the extension contemplates the occupancy of a street where no street railway track is already constructed that consents of abutters must be obtained. Broadway & Newburg St. Ry. v. Railway, 10 Bull., 72; Mt. Auburn Cable Ry. v. Neare, 54 Ohio St., 153.
As Bellefontaine avenue was one of the streets over which the Lima Electric Railway Company had previously been authorized to operate a double-track railway, at the time the Depot Company’s route was extended thereover, and as the defendant *120 company succeeded to the rights of the Depot Company, it necessarily follows that the defendant railway company has a franchise to operate over Bellefontaine avenue in the city of Lima, and by a double track if desired. And from what has been said heretofore it was competent for the council and the defendant railway company by agreement, to terminate the rights of the defendant railway company so arising on said grant and to renew the same for the period of twenty-five years, if the council was of the opinion that such renewal would be beneficial to the public, provided that the defendant railway company was not released from any obligation or liability imposed by the old franchise or grant.
It does not appear that the renewal attempts to release the defendant company from any such obligation or liability and, as the terms of the renewed grant are more beneficial to the city than the old grant, it may be inferred from this fact as well as the fact that the council passed the renewal ordinance, that it was satisfied that such renewal would be for the best interests of the public.
It seemed to be the contention of the plaintiff that if one of the declared purposes of the renewal grant were carried out, namely, to afford an entrance into the city of Lima to the Indiana, Columbus & Eastern Traction Company by double-tracking the defendant railway company’s lines in Bellefontaine avenue, an additional burden would be imposed upon said street, and the abutting property holders damaged thereby. As was before remarked if any abutting property holder is specially inj jured by reason of the construction of a street railway in the street abutting his .property, he has his private remedy; but the solicitor can not predicate his claim for relief upon any anticipated injury of a private character.
By the provisions of Revised Statutes, 3443-11, 3443-17, intorurban railway companies are authorized to make traffic arrangements with any street railroad company in any city or village as- to the use of so much of the tracks of the latter as may be necessary or desirable to enable the former to enter or pass- through such, city or village, which arrangements must *121 conform to the terms and conditions regulating street railroads in such city or village. The defendant railway company having thus the right to make a traffic arrangement with the Indiana, Columbus & Eastern for the use by the latter of the former’s tracks, no question can arise in this action as to such use being an additional servitude, of greater burden than was contemplated when the defendant railway company’s tracks were authorized in said Bellefontaine avenue.
B. C. Eastman, City Solicitor, and J. W. Half MU, for plaintiff.
W. B. BitcMe and D. J. Gable, for defendants. '
The only other point relied upon' by the plaintiff was, that the council could not renew a part of the grant and that consequently its action in attempting to extend the period o£ the defendant railway company’s franchise in Bellefontaine avenue alone was ultra vires. The court is clearly of the opinion that there is no force in this contention. Revised Statutes, 2501, clearly authorizes the renewal of the grant upon such terms as to the council may appear to be beneficial to the public.
Reasons readily suggest themselves as to why it might be desirable to extend the term of a grant with reference to a part of one route and not to another.
Plaintiff’s counsel most strenuously contended that the effect of such a holding would be practically to mortgage the future; that as the franchises of the defendant railway company would expire as to all other street railway routes in about ten and one-half years, yet, by 'this proposed renewal of the grant of a part of its franchise, it would leave about ten and one-half years of part of defendant company’s franchise yet to-run when all its other franchises had expired. This may or may not be desirable. But in the absence of fraud, it is not a question for the court, but one of expediency. It must be left to the patriotism and good sense of the citizens and the council of Lima to dispose of. The statutes do not forbid the proposed' action, and it is not for the court to substitute its judgment of the proprieties for that of the regularly constituted authoriies, who are clothed by statute with a discretion in this behalf.
The application for a temporary injunction will be refused.